UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 3:12-00055 |
| v. ) | |
| ) | JUDGE TODD CAMPBELL |
| TIMOTHY WAYNE HEDGE, ) | |
| JAMES BENJAMIN LEE ) | |

### UNITED STATES' RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Comes now the United States of America, by and through David Rivera, Acting United States Attorney for the Middle District of Tennessee, and Thomas E. Perez, Assistant Attorney General, United States Department of Justice, Civil Rights Division, and its undersigned counsel, Assistant United States Attorney Harold B. McDonough and United States Department of Justice Trial Attorney Adriana Vieco, and respectfully submits this response to Defendant James Benjamin Lee's motion to dismiss. *Def. Lee's Mot to Dismiss, ECF No. 88.*

BACKGROUND

**A. Facts and Procedural History**

James Benjamin Lee, a former Humphreys County Sheriff's Deputy, is charged with violating Title 18, United States Code, Section 242 while aiding and abetting his co-defendant, former Humphreys County Sheriff's Deputy Timothy Wayne Hedge. Specifically, the indictment charges Defendant Lee with assaulting Darrin Ring by kicking, punching, and striking him with a collapsible baton and a shod foot, while the defendant was acting under color of law in his capacity as a deputy sheriff. Defendant Lee caused Mr. Ring to suffer bodily injury and, by inflicting the beating with a collapsible baton and a shod food, used a dangerous weapon to commit the crime. Defendant Lee's conduct willfully deprived Mr. Ring of the rights

preserved and protected by the Constitution and laws of the United States to be secure in his person and to be free from the use of unreasonable force by one acting under color of law.

Defendant Lee's first trial, at which he was represented by appointed counsels from the Office of the Federal Public Defender, was held from March 26 to April 1, 2013. Because the jury was unable to reach a verdict, the Court declared a mistrial upon the motion of Defendant Lee's codefendant, and scheduled a retrial to begin on May 7, 2013. *Order, ECF No. 81*.

**B. The Budget Control Act of 2011**

The Budget Control Act of 2011, Public Law 112-25, was signed into law on August 2, 2011. *See* Bill Heniff Jr., *et al.*, Cong. Research Serv., R41965, *The Budget Control Act of 2011* (Aug. 19, 2011). The Act contained several significant components: among other things, it (1) "authorized increases in the debt limit of at least $2.1 trillion dollars (and up to $2.4 trillion under certain conditions)"; (2) "established caps on the amount of money that could be spent through the annual appropriations process for the next 10 years"; (3) "created a Joint Select Committee on Deficit Reduction that [was] instructed to develop a bill to reduce the federal deficit by at least another $1.5 trillion over the 10 year period ending in FY2021"; and (4) "established an automatic spending reduction process that include[d] sequestration (the cancellation of budgetary resources)," which would kick in only if the Joint Select Committee was not able to agree to a deficit-reduction bill of at least $1.2 trillion. *Id.*

The sequestration provisions were designed "as a mechanism to force Congress to act on further deficit reduction. The specter of harmful across-the-board cuts to defense and nondefense programs was intended to drive both sides to compromise. The sequestration itself was never intended to be implemented." *See* OMB Report Pursuant to the Sequestration

Transparency Act of 2012 (*hereinafter*, "OMB Report") at 1.  Nevertheless, the Joint Select Committee failed to reach an agreement.

As a result, "sequestration—a form of automatic cuts that apply largely across the board—is now scheduled to occur starting in January 2013 and to cover the period through 2021." Richard Kogen, Center on Budget and Policy Priorities, *How the Across-the-Board Cuts in the Budget Control Act Will Work* (Apr. 27, 2012), *available at* http://www.cbpp.org/files/12-2-11bud2.pdf (*hereinafter*, "CBPP Report").  "Broadly speaking, for 2013 the across-the-board cuts will mean about an 8.4 percent cut in most affected non-defense discretionary programs, a 7.5 percent cut in affected defense programs, an 8.0 percent cut in affected mandatory programs other than Medicare, and a 2.0 percent cut in Medicare provider payments." *Id.*

The sequestration provisions of the Budget Control Act of 2011 have affected the budgets of entities throughout the federal government.  This includes cuts to the budges of both the Department of Justice and the Office of the Federal Public Defender.  *See* OMB Report, App. A. To help meet these budget constraints, the Office of the Federal Public Defender for the Middle District of Tennessee has chosen to adopt a policy of furloughing employees one day per week. *Def. Lee's Motion to Dismiss*, ECF No. 88 at 2.

ARGUMENT

In his motion, Defendant Lee contends that the Budget Control Act of 2011—and the furlough policy that has resulted from it at the Office of the Federal Public Defender for the Middle District of Tennessee—has violated his constitutional rights.  Specifically, he argues that his rights to due process, the assistance of counsel, and equal protection have been infringed, and that the only adequate remedy is to dismiss the charges against him with prejudice.

3

Defendant Lee's constitutional rights have not been violated. First, the Budget Control Act does not represent a deliberate attempt to skew the balance of power in favor of the prosecution, nor does it result in fundamental unfairness; as such, it does not violate due process. Second, Lee's right to the effective assistance of counsel has not been violated, as he has not identified any concrete way in which the furlough policy has prejudiced his defense or otherwise deprived him of his right to competent representation. Third, because Defendant Lee's fundamental rights have not been infringed, his equal protection argument should be evaluated under rational-basis review, which the Budget Control Act easily survives.

Furthermore, even if Defendant Lee had established any sort of constitutional deprivation, dismissal of the charges against him with prejudice would be fundamentally unfair and inappropriate remedy. If the furlough policy has indeed impaired defense counsel's ability to prepare for a retrial of the same case they tried just last month, a fact Defendant Lee has failed to establish, then the Court should consider a remedy that is proportionate to the specific impairment asserted. By contrast, Defendant Lee's suggested remedy—which, based on its own logic, would equally apply to all other defendants currently represented by the Office of the Federal Public Defender, and therefore preclude the appointment of attorneys from the Office in future cases—would throw the criminal justice system in this district into chaos.

**A. Defendant Lee's Right to Due Process Has Not Been Infringed.**

Defendant Lee first argues that the Budget Control Act of 2011 violates the Due Process Clause of the Fifth Amendment by "deliberately skewing the balance of forces greatly in favor of the United States." *Def. Lee's Motion to Dismiss, ECF No. 88 at 5*. This argument rests in part on two erroneous factual premises: that the purpose of the Budget Control Act was to "deliberately" or "selectively" target the Federal Public Defender's Office for budget cuts; and

4

that the budget cuts set forth in the Act do "not apply to the United States Attorney's Office." (*Id.*)

The sequestration portion of the Budget Control Act of 2011 was designed to be "a blunt and indiscriminate instrument," imposing "[t]he specter of harmful across-the-board cuts to defense and nondefense programs" as an attempt "to drive both sides to compromise." OMB Report at 1. There is absolutely no indication that any purpose of the Act was to impose budget cuts specifically on the Federal Public Defender's Office, much less that the Act represented a deliberate attempt to skew the balance of power in favor of the prosecution in criminal cases. To the contrary, the cuts were intentionally broad-based and indiscriminate.

The sequestration provisions imposed $984 billion of budget cuts, spread evenly over nine years and divided equally between defense and non-defense spending. *See* CBPP Report at 2-3. "The $54.7 billion in non-defense cuts [in 2013] will come from both mandatory (entitlement) and discretionary (non-entitlement) programs." *Id.* at 3. These spending cuts affect both the Federal Public Defender's Office and the Department of Justice. *See* OMB Report at App. A, page 11 (noting $85 million in projected cuts to Defender Services); *id.* App. A, pages 120-27 (listing a total of $2.515 billion in projected cuts to the Department of Justice, including $161 million in projected cuts to the U.S. Attorneys' Offices). The Act does not mandate that any employees—whether at the Federal Public Defender's Office or elsewhere—be furloughed. Rather, individual offices throughout the federal government have been working closely with their funding components to cut the requisite amounts from their budgets based on their specific resources and needs. As Lee's motion indicates, Federal Public Defender's offices in other districts have evidently been able to meet their budget-cutting targets without having to furlough employees. (*See* DE# 88, Motion to Dismiss, at 4.) Likewise, while the Department of Justice

5

initially warned employees of the possibility of furloughs, the Attorney General has since announced that the Department believes it will be able to satisfy its budget-cutting targets in 2013 without instituting furloughs, by cutting numerous other costs and expenses.

In sum, Defendant Lee's attempt to portray the Budget Control Act as a deliberate or selective attempt to skew the balance of power in favor of the prosecution is contradicted by all available evidence. In this respect, the chief case that Lee relies on, *Wardius v. Oregon*, 412 U.S. 470 (1973), is completely inapplicable. In *Wardius*, the Oregon legislature explicitly required that a criminal defendant planning to assert an alibi defense must give notice to the government or be precluded from asserting the defense, while simultaneously declining to impose any reciprocal discovery obligations on the government, including any requirement "to reveal the names and addresses of witnesses it plans to use to refute an alibi defense." *Id.* at 473-75. By contrast, Congress and the President agreed to the sequestration provisions of the Budget Control Act without any intention or expectation that it would affect the balance of power between the prosecution and defense.

Moreover, even if the Budget Control Act had arisen from an intention to alter the balance of power between the prosecution and defense, that fact alone would not amount to a due process violation. As the *Wardius* Court explained, the Due Process Clause requires fundamental fairness in criminal trials. *Id.* at 476. Although "[i]t is fundamentally unfair to require a defendant to divulge the details of his own case while at the same time subjecting him to the hazard of surprise concerning refutation of the very pieces of evidence which he disclosed to the State," *id.*, it does not follow, as Lee contends, that changes to the budgets of the Department of Justice and the Office of the Federal Defender violates due process. Indeed, if Lee's argument were valid, neither the federal government nor any State could make changes to

6

the budget or staffing of any prosecutorial or public defender's office without violating due process rights—which, under Lee's theory, would result in the wholesale dismissal of pending charges against thousands of criminal defendants.

The Budget Control Act does not deliberately or selectively target the Federal Public Defender's Office or Defendant Lee in particular, and it does not result in criminal proceedings that are fundamentally unfair. Accordingly, Defendant Lee's argument that his right to due process has been infringed should be rejected.

### B. Defendant Lee's Right to Counsel Has Not Been Infringed.

Defendant Lee next argues that the Budget Control Act infringes his Sixth Amendment right to counsel, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963). As an initial matter, Defendant Lee's Sixth Amendment rights are not affected by the *budget cuts themselves*, or even by the fact that Assistant Federal Defenders have been subjected to pay cuts. As defense counsels would surely agree, the quality and zealousness of their representation of Lee will be dictated by their abilities, experience, and ethical obligations, rather than their salaries. Indeed, courts have held that a defendant's Sixth Amendment rights are not violated when his attorney's pay is cut—or even when his attorney is forced to represent him without any compensation:

> The basis of the plaintiffs' argument must be that the quality of legal assistance rendered, varies according to whether or not the attorney is retained and compensated or court appointed and uncompensated. The plaintiffs' contention is without merit. All attorneys who are members of the Louisiana Bar Association are governed by the Code of Professional Responsibility. The Code of Professional Responsibility presents canons, ethical considerations and disciplinary rules which prescribe standards for the practice of law. . . . The system of appointment of attorneys to represent indigent criminal defendants is not constitutionally infirm merely because the appointed attorneys are not compensated.

*Louisiana ex rel. Purkey v. Ciolino*, 393 F. Supp. 102, 110 (E.D. La. 1975) (footnote omitted); *see also United States v. Jones*, 801 F.2d 304, 315 (8th Cir. 1986) ("Jones's argument,

7

essentially, is that because his court-appointed attorney was not paid enough for work done on this case, Jones was denied his right to counsel. Jones has a constitutional right to counsel, but not to counsel paid a certain fee."); Tenn. Op. Att'y Gen. No. 92-20, 1992 WL 544994, at *5 ("[I]t is the opinion of this Office that the cessation or reduction of funds to the Shelby County Public Defender's Office which could result in the appointment of private attorneys to represent indigent criminal defendants on a pro bono basis does not per se violate the Sixth Amendment of the United States Constitution. Likewise, the cessation of such funds to reimburse private attorneys appointed to represent indigent criminal defendants is not a per se violation of the Sixth Amendment.").

Thus, if Lee's Sixth Amendment rights are implicated, it is not from the cuts in funding or salaries themselves, but rather from the Middle District of Tennessee's Federal Defenders Office's self-imposed policy of furloughing attorneys in order to meet budgetary obligations. It is important to note, however, that the furlough policy does not deny Defendant Lee "the assistance of counsel altogether," "either actually or constructively." *See Roe v. Flores-Ortega*, 528 U.S. 470, 483 (2000). Of significance is that Defendant Lee, unlike many defendants is represented by two very experienced Federal Public Defenders. Certainly at least one of Defendant Lee's counsels will be present for each day of the retrial. And while they may be furloughed for certain days before the retrial begins, either one of the assigned attorneys will be available to speak with Lee and act on his behalf at all relevant times. This case is therefore drastically different from *Geders v. United States*, 425 U.S. 80 (1976), and *United States v. Allen*, 542 F.2d 630 (4th Cir. 1976), which both involved situations in which the trial court had forbidden the defendant from having any contact with his attorney during a portion of the trial. There is no similar restriction in place here. Indeed, if the fact that counsel will be furloughed on

8

certain days resulted in an abridgement of Defendant Lee's right to counsel, then any defendant whose attorney was temporarily unavailable—whether because she was representing another client, taking a vacation, or taking medical leave—would be denied his Sixth Amendment rights. There is scarcely a defendant who could ever be properly tried under the Sixth Amendment.

Because Defendant Lee has not been denied the right to counsel altogether, the only relevant inquiry before the Court is whether the furlough policy has abridged Defendant Lee's right to the *effective assistance* of counsel. To establish such an abridgement, however, Defendant Lee must make "a showing of actual prejudice (i.e., that, but for counsel's errors, the defendant might have prevailed)." *Flores-Ortega*, 528 U.S. at 484; *see also United States v. Cronic*, 466 U.S. 648, 658 (1984) ("[T]he right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated."); *United States v. Morrison*, 449 U.S. 361, 365 (1981) ("The premise of our prior cases is that the constitutional infringement identified has had or threatens some adverse effect upon the effectiveness of counsel's representation or has produced some other prejudice to the defense. Absent such impact on the criminal proceeding, however, there is no basis for imposing a remedy in that proceeding, which can go forward with full recognition of the defendant's right to counsel and to a fair trial.").

In this case, Defendant Lee has not identified any concrete way in which his representation will be affected by the furlough policy. He has not set out any preparation or investigation that counsel will be unable to perform, nor any motion that counsel will be unable to file. Indeed, given the fact that is a retrial of a trial that just ended a month ago and involved

9

the testimony of eight (8) witnesses, it is doubtful that there is any work that counsels otherwise would have done but will forgo on account of the furloughs. Counsels have already prepared for and tried this case once. They will have had roughly six weeks to prepare for the retrial, which is not expected to involve any new legal theories. As such, it seems unlikely that their preparation will be affected by the furloughs at all.

Moreover, even if Defendant Lee could identify some concrete way in which counsel's preparation has been or will be affected by the furloughs, doing so would be insufficient to establish an infringement of his right to the effective assistance of counsel. The Constitution entitles Lee "to a reasonably competent attorney whose advice is within the range of competence demanded of attorneys in criminal cases." *Cronic*, 466 U.S. at 655 (internal quotation marks and citations omitted). It does not entitle him to an attorney who has no competing professional or personal obligations and can devote all available time, effort, and resources to representing him. Accordingly, to establish that his right to the effective assistance of counsel has been infringed in this context, Defendant Lee must show not only show that the furloughs have affected counsel's preparation for the retrial, but also show that these effects have prejudiced or will prejudice his case. *See Flores-Ortega*, 528 U.S. at 484; *cf. United States v. Jamieson*, 427 F.3d 394, 407-08 (6th Cir. 2005) (explaining that an indigent defendant is entitled to funding for "investigative, expert, or other services under the Criminal Justice Act . . . upon a demonstration that (1) such services are necessary to mount a plausible defense, and (2) without such authorization, the defendant's case would be prejudiced"). Defendant Lee has failed to make either showing, and the Court should therefore reject the contention that his Sixth Amendment rights have been infringed.

10

Case 3:12-cr-00055   Document 92   Filed 04/30/13   Page 10 of 14 PageID #: 303

**C. Defendant Lee's Right to Equal Protection Has Not Been Infringed.**

Finally, Defendant Lee argues that his Fifth Amendment right to equal protection has been infringed. This argument is largely derivative or parasitic of his right-to-counsel argument. He contends that, as a result of the fortuitous decision to appoint him two (now-furloughed) attorneys from the Federal Public Defender's Office, his Sixth Amendment rights have been infringed; and because these rights are fundamental, the cuts imposed by the Budget Control Act of 2011 must be evaluated under strict scrutiny. For the reasons set forth above, however, Defendant Lee's Sixth Amendment rights have not been infringed. As such, strict scrutiny does not apply. *See, e.g.*, *In re Grand Jury Proceedings*, 810 F.2d 580, 587 (6th Cir. 1987) ("Strict judicial scrutiny of a legislative classification is required only when the classification *impermissibly interferes* with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." (emphasis added)); *Regan v. Taxation Without Representation of Washington*, 461 U.S. 540, 548-49 (1983) (explaining that the question is not whether a law *affects* fundamental rights, but instead whether it *infringes* them).

Because strict scrutiny does not apply, the cuts imposed by the Budget Control Act should be evaluated under rational-basis review. "On rational-basis review, a classification in a statute . . . comes to [the Court] bearing a strong presumption of validity, and those attacking the rationality of the legislative classification have the burden to negative every conceivable basis which might support it." *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314-15 (1993) (internal quotation marks and citations omitted). The law must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification," and where such rational justifications exist, the Court's "inquiry is at an end." *Id.* at 314. In this case, the Budget Control Act of 2011 was enacted in response to a perceived concern with budget deficits

11

and the national debt. It represented a compromise deal that raised the debt ceiling in exchange for future budget cuts, with the sequestration provisions designed to induce a political bargain on larger, more comprehensive cuts. These justifications easily satisfy the rational-basis standard. *See, e.g.*, *Rodriguez v. Cook*, 169 F.3d 1176, 1181 (9th Cir. 1999) ("Budgetary concerns are a legitimate governmental interest" sufficient to satisfy rational-basis review); *Aldridge v. City of Memphis*, 404 F. App'x 29, 42-43 (6th Cir. 2010) (noting that budgetary constraints supply legitimate grounds that satisfy rational-basis review).

Because rational-basis review applies, and because Defendant Lee has not carried his burden of refuting every conceivable basis that might support the budget cuts imposed by the Budget Control Act of 2011, Defendant Lee's equal protection argument should be rejected. *See also* 16B C.J.S. *Constitutional Law* § 1174 (2013) ("A criminal defendant is afforded equal protection of the laws, when he or she receives competent, able, and effective representation from an attorney.").

### D. Even If Defendant Lee's Rights Had Been Infringed, Dismissal with Prejudice Would Be an Inappropriate Remedy.

As set forth above, Defendant Lee's constitutional rights have not been infringed. But even if Defendant Lee could establish a deprivation of his rights, dismissal with prejudice of the charges against him would be a wildly disproportionate remedy. *See Morrison*, 449 U.S. at 365 ("[A]bsent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the [constitutional] violation may have been deliberate."). As the Supreme Court has explained, "[c]ases involving Sixth Amendment deprivations are subject to the general rule that remedies should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests." *Id.* at 364. The *Morrison* Court reviewed such cases as *Gideon*, *Geders*, and others—in which the defendants

had clearly been deprived of their constitutional rights—and noted that "[n]one of these deprivations, however, resulted in the dismissal of the indictment." *Id.* at 364-65. Instead, the proper approach for a court to take is "to identify and then neutralize the taint by tailoring relief appropriate in the circumstances to assure the defendant the effective assistance of counsel and a fair trial." *Id.* at 365.

In this case, for example, if Defendant Lee were to demonstrate that the furlough policies have impaired counsel's ability to adequately prepare for trial, the Court could consider granting a continuance, appointing additional or substitute counsel (either from the C.J.A. panel or on a pro bono basis), or adjusting trial-related deadlines to mitigate the effect of the furloughs. In addition, the Federal Defenders Office for the Middle district of Tennessee could also consider revisiting its furlough policy, at least, as applied to counsel and staff assigned to this retrial. Such remedies would neutralize the specific deprivation, if any, that Lee identified, while also "recognize[ing] the necessity for preserving society's interest in the administration of criminal justice." *Id.* at 364. Defendant Lee's approach, by contrast, would, if taken to its logical conclusion, require the dismissal of all charges pending against any defendant represented by the Federal Public Defender's Office in this District, thereby granting a completely arbitrary and undeserved windfall to those defendants while jeopardizing the public's right to the fair administration of justice and throwing the criminal justice system in this District into chaos.

## CONCLUSION

Because Defendant Lee's constitutional rights have not been infringed, and because dismissal of the pending charges would be an inappropriate remedy in any event, the government respectfully submits that Defendant Lee's motion to dismiss should be denied.

Respectfully submitted,

| | |
|---|---|
| THOMAS E. PEREZ<br>Assistant Attorney General<br>United States Department of Justice<br>Civil Rights Division | DAVID A. RIVERA<br>Acting United States Attorney for the<br>Middle District of Tennessee |
| **s/ Adriana Vieco**<br>ADRIANA VIECO<br>Trial Attorney<br>Civil Rights Division<br>601 D Street, N.W. # 5542<br>Washington, D.C. 20009<br>Phone: 202/305-4116 | **s/ Harold B. McDonough**<br>HAROLD B. MCDONOUGH<br>Assistant United States Attorney<br>110 9th Avenue, South, Suite A-961<br>Nashville, TN 37203-3870<br>Phone: 615/736-5151 |

### Certificate of Service

I hereby certify that a copy of the foregoing United States' Response to Defendant's Motion to Dismiss was served this 30th day of April, 2013, via the electronic filing system upon the following:

| | |
|---|---|
| Jerred A. Creasy<br>Brogdon, Creasy & Sanders, PLLC<br>230 N. Main Street<br>Dickson, TN 37055 | Isaiah S. Gant<br>Dumaka Shabazz<br>Federal Public Defender's Office<br>810 Broadway, Suite 200<br>Nashville, TN 37203 |

                                                  s/ **Adriana Vieco**
                                                  ADRIANA VIECO, Trial Attorney